UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LADON GRISSOM, | ) |
| Petitioner, | ) ) ) |
| vs. | ) )   Case No. 4:18-CV-2081 SRW |
| DAVID VANDERGRIFF,[1] | ) ) ) |
| Respondent(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Ladon Grissom for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.   BACKGROUND**

In 2012, a jury convicted Petitioner of two counts of second-degree murder, three counts of armed criminal action, and one count of first-degree assault. The Circuit Court for the City of St. Louis sentenced him to three consecutive life sentences. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

---

[1] Petitioner is currently incarcerated at the Eastern Reception, Diagnostic, and Correctional Center in Bonne Terre, Missouri. *See Missouri Dept. Corr. Offender Search*, http://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited March 24, 2021). David Vandergriff is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

At approximately 9:50 p.m. on October 30, 2010, Demetrius Hewlett and Terrence Snipes were shot and killed near the intersection of John and Penrose in the City of St. Louis. Mustaffaa Abdullah was also fired upon but unhit. Mr. Abdullah and other eyewitnesses identified Petitioner as the shooter. The police found Petitioner's DNA on the grip and trigger of a recovered assault rifle which fired 26 shots at the scene of the crime.

## II.    STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

### III. DISCUSSION

Petitioner asserts seven grounds for relief in his Petition: (1) he received ineffective assistance of counsel when his trial counsel failed to investigate and call his parents as witnesses; (2) he received ineffective assistance of counsel when his trial counsel failed to investigate and call Donald Branscomb as a witness who would have testified Petitioner was not the shooter; (3) he received ineffective assistance of counsel when his trial counsel prevented him from testifying by falsely promising she would present exonerating evidence; (4) an African-American juror was excluded in violation of the Equal Protection Clause of the Fourteenth Amendment; (5) he received ineffective assistance of counsel when his trial counsel did not present surveillance footage from Wal-Mart that would have established his alibi; (6) he received ineffective assistance of counsel when his trial counsel failed to investigate and did not present evidence to

3

discredit the DNA evidence obtained from the weapon; and (7) the trial court denied Petitioner his right to due process under the Fourteenth Amendment when it allowed three witnesses to give false and perjured testimony.

### A. Timeliness of the Petition

Before getting to the merits of Petitioner's claims, the Court must first address the State's argument the Petition is untimely. The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for writs of habeas corpus filed under 28 U.S.C. § 2254, which begins running on the date judgment on the original conviction becomes final. *Williams v. Bruton*, 299 F.3d 981, 982 (8th Cir. 2002). The AEDPA's one-year limitation period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2254(d)(2).

Petitioner's judgment became final on the day his time period for seeking direct review ended. 22 U.S.C. § 2244(d)(1)(A); *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) ("[T]he judgment becomes final at the 'expiration of the time for seeking such review' – when the time for pursuing direct review in this Court, or in state court, expires."). The Court of Appeals issued the mandate for his direct appeal on March 31, 2014. Petitioner did not seek further review before the Missouri Supreme Court, so his judgment became final on that date. The statute of limitations for his federal habeas then began running on April 1, 2014. Fed. R. Civ. P. 6(a)(1)(A) (excluding from the time computation the day of the event that triggers the time period); *see also King v. Hobbs*, 666 F.3d 1132, 1136 (8th Cir. 2012). Petitioner filed his *pro se* PCR motion on May 28, 2014. (ECF No. 11-6, at 8). The statute of limitations was then tolled from May 28, 2014, until his PCR proceedings concluded on February 16, 2018, when the Missouri Court of Appeals issued the mandate for Petitioner's PCR appeal. 28 U.S.C. §

2244(d)(2). The statute of limitations began running again on February 17, 2018, until December 13, 2018, when Petitioner filed his Petition in this Court.

Petitioner accumulated 58 days towards his statute of limitations from April 1, 2014, until May 28, 2014. He then accumulated an additional 300 days from February 17, 2018, until December 13, 2018. This totals to 358 days. Therefore, Petitioner filed his Petition within the one-year statute of limitations.

    **B.**        **Ground One – Failure to Call Parents as Witnesses**

In his first ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to investigate or call as witnesses his parents. Petitioner claims his parents would have testified Petitioner was at their house, 40-45 minutes away from the crime scene, at the time the shooting occurred.

The Missouri Court of Appeal's denied Petitioner's PCR appeal on this point:

> After reviewing the case record, we find that Mr. and Mrs. Grissom testified at the evidentiary hearing that Movant was at their home in Lake St. Louis, some 45 minutes from the murder scene, after 10 p.m. Mrs. Grissom, however, conceded that she was not sure when Movant arrived, and Mr. Grissom also could not testify unequivocally as to his son's arrival time. Mr. Grissom thought his son arrived somewhere from 10 to 10:30 p.m., but conceded that he could not be positive. The motion court found their testimony "credible enough" and we defer to that finding of credibility.
>
> Additionally, the transcript of the evidentiary hearing reveals that the potential testimony of Movant's parents was not known to trial counsel prior to trial, as Movant did not advise Trial Counsel he had proceeded to his parents' home from Walmart. The motion court found Movant's testimony "not credible" that he advised Trial Counsel of the parents' alibi testimony. We defer to the motion court's finding of credibility. Moreover, Trial Counsel testified that she did not think the home visit was the "alibi time." Instead, she thought the Walmart time was the time of the shooting. Because Movant could not establish his parents would have produced a viable defense, he could not establish ineffective assistance of counsel based on the failure to call them as witnesses.

(ECF No. 11-10, at 6-7).

5

In order to prevail on an ineffective-assistance-of-counsel-claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): (1) he must show counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Petitioner cannot show he was prejudiced by his counsel's failure to call his parents as witnesses because he has not shown his parents could establish an alibi. At the PCR evidentiary hearing, Petitioner's father testified Petitioner came to their house on the night of the shooting around "10, 10:30 p.m., 9:30, something like that. I'm not sure." (ECF No. 11-7, at 7). Petitioner's mother also testified to seeing Petitioner on that night. *Id*. at 18. She could not remember when he arrived, only that it was dark outside. *Id*. at 19. On cross-examination, she reiterated that she could not say what time he came to her house because she did not know the time. *Id*. at 23.

The Court cannot find that there is a reasonable probability the outcome of the trial would have been different had this testimony been presented. The Court of Appeals' decision is entitled to deference as it is not an unreasonable application of federal law nor an unreasonable determination of the facts. The Court will deny the Petition on this ground.

  **C. Ground Two – Failure to Call Donald Branscomb as Witness**

In his second ground for relief, Petitioner argues he received ineffective assistance of counsel when his trial counsel failed to call Donald Branscomb as a witness. The facts of this claim, as described by the Missouri Court of Appeals, are as follows:

6

> [T]he witness Branscomb, an inmate of the City Justice Center with Movant, testified that the murders differed from the testimony of the State's witnesses. Branscomb claimed that the assailants fired from a moving vehicle, that he personally inspected the dead bodies but did not choose to talk to police at the scene, that shell casings could have been observed only on Penrose St., and that Movant was not one of the shooters. Both Branscomb and Movant testified that Movant learned by happenstance that Branscomb had witnessed the shooting at John near Penrose St. Branscomb is a convicted felon, and the motion court found that his testimony was "patently incredible, given the discrepancies between his version of events and undisputed trial evidence (e.g., the location of shell casings on both John and Penrose St.) and given the obviously incredible 'coincidence' that [Movant] overheard Branscomb discussing the murders while both were at the City Justice Center."

(ECF No. 11-10, at 7-8).

The Court of Appeals denied Petitioner's PCR appeal on this point, finding:

> [B]ecause one requirement for a finding of ineffective assistance of counsel for failure to investigate a witness is that the trial counsel knew or should have known of the existence of the witness, Movant's claim fails. As the motion court also noted, there is no credible evidence that Trial Counsel knew of Branscomb's existence or purported testimony prior to trial. The motion court rejected as "incredible" Movant's testimony that he informed Trial Counsel of Branscomb's identity and likely testimony in advance of trial.
>
> Again, we acknowledge that the motion court made a credibility finding here, and "[t]his Court defers to 'the motion court's superior opportunity to judge the credibility of witnesses.'" The motion court noted that it had the opportunity to observe Movant's demeanor during the trial, at sentence, and during the colloquy pursuant to Rule 29.07. The motion court noted that Movant had several prior felony convictions, and found him not to be a credible witness. The motion court also concluded that Branscomb, a felon sharing residency at the jail with Movant, would have had little effect in negating the testimony of the State's witnesses who were eye witnesses and knew Movant personally, backed by the DNA evidence, revealing the presence of Movant's DNA on one of the recovered rifles matched to shell casings obtained at the scene of the murder. Finally, the testimony of Movant's Trial Counsel demonstrates her lack of any recollection at all of Branscomb's name, and that she would have wanted to investigate him if he had been a known eyewitness to contradict the State's witnesses.
>
> Thus, it is not ineffective assistance of counsel for failure to investigate a witness of whom counsel is not made aware when counsel took reasonable steps to uncover potential witnesses.

(ECF No. 11-10, at 8-9) (internal citations omitted).

7

The Court of Appeals decision is entitled to deference. Petitioner has not shown his trial counsel's performance was deficient or that he was prejudiced by her actions. At the PCR evidentiary hearing, Petitioner's trial counsel testified she did not remember learning of Mr. Branscomb during her investigation of this case. (ECF No. 11-7, at 36). Petitioner testified in his deposition for his PCR motion that he told his trial counsel about Mr. Branscomb. The PCR motion court found Petitioner not to be a credible witness and accepted his trial counsel's testimony over Petitioner's. This Court must accept the state court's credibility determination. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Without Petitioner's testimony, there is no evidence in the record his trial counsel knew about Mr. Branscomb to call him as a witness.

Petitioner also has not shown he was prejudiced by his trial counsel's failure to call Mr. Branscomb. While Mr. Branscomb's testimony, if true, would be powerful, it is unlikely the jury would believe his testimony over the four witnesses who saw the shooting and identified Petitioner as the shooter, and Petitioner's DNA being found on the gun used to kill the two victims. Petitioner has not shown a reasonable probability that, but for counsel's unprofessional errors, the result of his trial would have been different. The Court of Appeals' decision is entitled to deference as it is not an unreasonable application of federal law or an unreasonable determination of the facts. The Court will deny the Petition on this ground.

### D.     Ground Three – Right to Testify

In his third ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel prevented him from testifying on his own behalf by falsely promising him that she would introduce exonerating evidence without his testimony. The Court

8

summarizes the facts of this claim from the Missouri Court of Appeals' order denying Petitioner's PCR appeal on this claim. (ECF No. 11-10, at 9-12). Petitioner claimed at the time of the shooting he was at a Walmart in St. Charles with his wife and child. Surveillance footage from Walmart showed Petitioner's wife and child but not Petitioner. At his PCR evidentiary hearing, Petitioner testified it was always his plan to testify, his counsel never explained his right to testify, and she told him he did not need to testify because she would present the Walmart surveillance footage. He claims he would have testified he went to Walmart and his parents' house on the night of the shooting.

Trial counsel testified she discussed Petitioner's right to testify prior to the beginning of the trial, and he told her he wanted to make that decision at a later time. During trial, Petitioner told trial counsel he wanted to speak with his father before deciding whether he should testify. After speaking with his father, Petitioner decided not to testify. His trial counsel also testified she remembered him watching the DVD of the recorded statement he made to the detectives prior to making the decision not to testify. At Petitioner's trial, the trial court advised Petitioner of his right to testify or not. Petitioner indicated he understood, and the trial court made clear Petitioner should notify the court if he wished to testify. (ECF No. 11-10, at 9-12).

Ultimately, the Court of Appeals concluded:

> Whereas the motion court found Trial Counsel credible, we find that her testimony was sufficient to demonstrate that Movant made his own decision not to testify and that it was Trial Counsel's strategy not to present the alleged alibis that he was at Walmart without being seen in the surveillance video with his wife, or at his parents' home at a different time than the alleged shooting.
>
> Based on our review of the record, we find that the motion court did not err in finding Movant voluntarily decided not to testify at trial after Trial Counsel made strategic decisions not to present alibi evidence of visits to Walmart and Movant's parents' home.

(ECF No. 11-10, at 12).

A criminal defendant has a constitutional right to testify on his behalf. *Berkovitz v. Minnesota*, 505 F.3d 827, 828 (8th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987)). "Only the defendant may waive [his] right to testify, and the waiver must be made voluntarily and knowingly." *Id*. Petitioner styles his claim as an ineffective assistance of counsel claim. This is a separate claim from one arguing he was denied his right to testify. *Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996) ("[A] claim charging the denial of the constitutional right to testify on one's own behalf is wholly unrelated to the elements of an ineffective assistance of counsel claim.") (quotations omitted). Thus, the Court must analyze Petitioner's claim under the *Strickland* standard. *Id*.

Petitioner has not established his counsel was ineffective. At the PCR evidentiary hearing, Petitioner's counsel, whom the motion court found to be credible, testified Petitioner made the decision not to testify after speaking with his father and right before the defense rested. (ECF No. 11-7, at 38). She stated Petitioner was "running the show" on whether to testify. *Id*. at 49. She asked him several times before trial about testifying because it could have impacted her voir dire questions, but he always asked for her to wait for his answer. *Id*. Petitioner provides no evidence, beyond his own testimony which the PCR motion court found not to be credible, that his counsel in any way attempted to coerce him into not testifying. During trial, Petitioner told the trial court he fully understood his right to testify and that it was his decision alone. At the close of evidence, the following colloquy occurred:

> The Court: Mr. Grissom, it's not my desire to interfere with any decisions you and your lawyer have made. I need to be sure, however, that you understand that you have a right to testify or not to testify as you alone choose. Do you understand that?
>
> The Defendant: Yes, sir.
>
> The Court: So unless I hear something to the contrary from you before the jury retires, I will assume you and your lawyer are in agreement about your not testifying, okay?

The Defendant: Yes, sir.

(ECF No. 11-1, at 492).

Later that same day, the Court again questioned Petitioner on his right to testify:

The Court: Mr. Grissom, your lawyer made a remark to me in chambers about your decision not to testify, so I just want us to be on the same wavelength. What I said a few minutes ago goes. You know, it's your decision. It's not your mom's, your dad's, your lawyer's, mine or anybody else's. If you want to testify, you have the right to testify, just like you have the right not to testify. It's up to you. Do we understand each other?

The Defendant: Yes, sir.

The Court: All right. So we are going – I've excused the jury, but when we reconvene tomorrow morning, if you want to testify, that's the way it will be. If you choose not to testify, that's the way it will be. Okay?

The Defendant: Yes, Sir.

(ECF No. 11-2, at 495).

The following morning, Petitioner's counsel informed the Court he had decided not to testify. *Id*. at 500. All of this occurred after the close of evidence. Therefore, Petitioner knew when he made his decision not to testify that his counsel would not be introducing any evidence of his alibi, including the Walmart surveillance footage or anything else. Petitioner has not shown his counsel coerced him into not testifying or that the decision was anything but his own; therefore, he has not shown she was ineffective.

The Court of Appeals' decision is entitled to deference as it is not an unreasonable application of federal law or an unreasonable determination of the facts. The Court will deny the Petition on this ground.

E.     **Ground Four –** *Batson* **Challenge**

11

In his fourth ground for relief, Petitioner asserts the trial court erred in denying his *Batson* challenge. Petitioner argues the State struck an African American juror but did not strike a similarly situated white juror.

Before impaneling the jury in Petitioner's trial, the State moved to peremptorily strike venireperson Venessa Trotman, an African American. (ECF No. 11-5, at 7).[2] Petitioner's counsel objected. The prosecutor explained he struck Ms. Trotman because she worked with another juror who was "very vocal" with her opinions on police credibility and the criminal justice system. The prosecutor believed there was a "very real chance" this juror spoke to Ms. Trotman about her opinions, potentially swaying Ms. Trotman's own opinions. Ms. Trotman did not express any such opinions during voir dire. Petitioner's counsel argued another juror, Mr. Haas, was not struck even though he knew another juror, Mr. Harris. Mr. Harris was a client or customer of Mr. Haas. The prosecution argued co-workers are more likely to share opinions than a business owner and client or customer. The trial court found the State advanced "credible and legitimate nondiscriminatory reasons" for striking Ms. Trotman.

The Missouri Court of Appeals applied the following standard in denying Petitioner's appeal on this point:

> When a defendant raises a race-based *Batson* challenge, three procedural steps are followed: "(1) the defendant raises a *Batson* challenge with respect to a specific venire person struck by the State, identifying the cognizable racial group to which that person belongs; (2) the State must supply a reasonably specific and clear race-neutral reason for the challenged strike; and (3) if the State provides an acceptable reason for the strike, then the defendant must show that the State's given reason or reasons were merely pretextual and that the strike was racially motivated. *State v. Johnson*, 207 S.W.3d 24, 35 (Mo. banc 2006). In determining pretext, the primary consideration is the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case. *Id*. Factors that a court considers in determining pretext include: 1) whether a similarly situated white juror was not struck; 2) the "degree of logical relevance between the proffered explanation and the case to be tried[;]" and, 3) the prosecutor's credibility based on

---

[2] These facts are taken from the Missouri Court of Appeals' order denying Petitioner's direct appeal.

12

> his or her demeanor or statements made during voir dire and the court's past experiences with the prosecutor. *State v. Strong*, 142 S.W.3d 702, 712 (Mo. banc 2004) (citation omitted).

(ECF No. 11-5, at 6-7).

The Court of Appeals held the State's reasoning for striking Ms. Trotman was not pretextual:

> Having reviewed the record, we believe it was reasonable for the prosecutor to assert that Trotman's acquaintance with Edwards, who has indicated a distrust of law enforcement officers, might have influenced Trotman and made her less likely to believe the State's law enforcement witnesses. The prosecutor struck Edwards for cause, as well as another venireperson who had indicated that he had a bias against the police. There is otherwise no indication on the record that the prosecutor failed to strike a similarly situated Caucasian juror. Further, the fact that Trotman was not friends with Edwards, which defense counsel raised to rebut the prosecutor's race-neutral reason, does not negate any possible influence Edwards may have had as a result of their co-worker relationship.
>
> Defendant contends that the State's reason for the peremptory strike is not a "reason at all" because Trotman confirmed her willingness to follow the law. However, Defendant cites no authority for the proposition that a venireperson's willingness to follow the law is a factor indicative of pretext. Indeed, Trotman's assertion in this regard does not lead to the conclusion that the prosecutor's proffered reason was pretextual. Accordingly, the trial court did not clearly err by overruling Defendant's *Batson* challenge and permitting the State's peremptory strike of Trotman. Point II is denied.

(ECF No. 11-5, at 8-9).

Petitioner argues the Court of Appeals did not consider that the State did not strike a similarly situated white juror, Mr. Haas, making the Court of Appeals' decision an unreasonable application of *Batson* and an unreasonable determination of the facts. "[T]he equal protection clause forbids the prosecutor to challenge potential jurors solely on account of their race[.]" *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The defendant bears the burden to establish a prima facie case of racial discrimination in the use of a peremptory challenge. *Purkett v. Elem*, 514 U.S. 765, 767 (1995). The burden then shifts to the prosecution to put forth a neutral explanation for challenging the jurors. *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005). "[T]he prosecutor must

13

give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenge." *Id*. "The trial court will then have the duty to determine if the defendant has established purposeful discrimination." *Id*. "It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged." *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995).

The Missouri Court of Appeals' decision was not an unreasonable application of the *Batson* framework. Petitioner raised a challenge to the State's peremptory strike of Ms. Trotman. The State provided a race-neutral reason for the strike, that Ms. Trotman was a co-worker of another juror, who had been stricken, that had negative views of the police, and Ms. Trotman may have been influenced by this juror's opinions. Petitioner argued a similarly situated white juror, Mr. Haas, had not been stricken. However, Mr. Haas was not similarly situated to Ms. Trotman. His relationship with another juror was that of business owner and client or customer. It was reasonable for the trial court to conclude this relationship was different than that of co-workers. Petitioner argues the Court of Appeals did not consider Mr. Haas in its ruling, but the Court of Appeals' order clearly shows it considered Mr. Haas because it included the argument that he was not stricken in its recitation of the facts surrounding Petitioner's claim. (ECF No. 11-5, at 7-8). The Court of Appeals then concluded, "There is otherwise no indication on the record that the prosecutor failed to strike a similarly situated Caucasian juror." The Court of Appeals' decision is entitled to deference as it did not unreasonably apply federal law or unreasonably determine the facts. The Court will deny the Petition on this ground.

### F. Ground Five – Walmart Surveillance Footage

In his fifth ground for relief, Petitioner argues he received ineffective assistance of counsel when trial counsel failed to investigate evidence of his alibi, specifically the Walmart surveillance footage. Petitioner did not raise this claim before the state courts in his Amended PCR motion or appeal of his PCR motion. Therefore, it is procedurally defaulted.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan,* 526 U.S. at 848)). A petitioner under § 2254 may avoid procedural default only by showing there was cause for the default and resulting prejudice, or a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner argues he can establish cause and prejudice under *Martinez v. Ryan*, 66 U.S. 1 (2012).

In *Coleman v. Thompson*, the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default. 501 U.S. 722, 753-75 (1991). In *Martinez*, the Supreme Court recognized a narrow exception to this rule: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from

15

hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective." 566 U.S. at 17. The Supreme Court also noted that a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

Petitioner has not shown his ineffective assistance of counsel claim has any merit. He has not established he was prejudiced by his counsel's alleged failure to investigate the Walmart surveillance footage. The record before the state court establishes the video shows a woman and a baby exiting a car, entering Walmart, and returning to the car, but the video never showed Petitioner. (ECF No. 11-7, at 12). Petitioner has not shown how this evidence would establish his alibi defense and convince a jury he was at Walmart at the time of the shooting. Therefore, he has not shown he was prejudiced by his counsel's alleged failure to investigate his alibi defense. Petitioner has not shown his ineffective assistance of counsel claim has any merit, and he has not established cause and prejudice for his default. The Court will dismiss the Petition on this ground as procedurally defaulted.

### G. Ground Six – DNA Evidence

In his sixth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel did not investigate or present evidence to discredit the DNA evidence obtained from the weapon used in the shooting. In his Amended PCR motion, Petitioner raised an ineffective assistance of counsel claim on the basis his trial counsel did not have the DNA evidence from the weapon retested. His claim before this Court argues his counsel should have challenged the fact the DNA evidence was a mixture of three individuals' DNA. Because Petitioner's claim before this Court has a different factual basis than the claim before

16

the state court, his claim is procedurally defaulted. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (A claim must rely on the same factual and legal bases relied on in state court). Petitioner argues he can show cause and prejudice for his default under *Martinez*. To do so, Petitioner must establish is ineffective assistance of counsel claim is substantial.

To establish his counsel was ineffective for failing to consult or call an expert witness to challenge the DNA mixture found on the firearm, Petitioner must present "evidence of what a scientific expert would have stated at trial." *Rodela-Aguilar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010) (internal quotation omitted). Petitioner does not include any allegations of an expert who would have testified or to what they would have testified. Furthermore, trial counsel did hire a second lab to review the police's DNA analysis. Trial counsel's lab confirmed the police lab's work was good, followed proper procedures, and did everything they were supposed to do. (ECF No. 11-7, at 43, 46, 51). PCR counsel also received court orders permitting re-testing of the DNA, but no additional DNA testing evidence was introduced during the PCR hearing. *Id.* at 39-41, 79.

Petitioner has not established his counsel's performance was deficient on this basis or that he was prejudiced by her allegedly deficient performance. He has not shown his claim is substantial; therefore, he has not established cause and prejudice to excuse the procedural default. The Court will deny the Petition on this ground as procedurally defaulted.

      **H.**      **Ground Seven – False and Perjured Testimony**

In his seventh ground for relief, Petitioner asserts the trial court improperly admitted the false and perjured testimony of three witnesses for the State: Mustaffaa Abdullah, Franklin McGill, and Alex Snipes. Petitioner did not raise this claim before the state courts; therefore, it is procedurally defaulted. He argues he can establish cause and prejudice for the default under

17

*Martinez*. However, Petitioner has not established this claim has any merit. In neither his Petition nor his reply does he explain what testimony was false. Vague and conclusory allegations are not enough to establish a claim. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Petitioner has not excused his procedural default. The Court will dismiss the Petition on this ground as procedurally defaulted.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Ladon Grissom for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Ladon Grissom's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 29th day of March.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**